# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| **CATHERINE Y. DEWALL,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 6:15-cv-00288-AA |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

James S. Coon
Swanson, Thomas, Coon & Newton
820 SW 2nd Ave., Suite 200, Portland, OR 97204
        Attorney for Plaintiff

Billy J. Williams
United States Attorney
Janice E. Herbert
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

Thomas M. Elsberry
Special Assistant United States Attorney

Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075
       Attorneys for Defendant

**Aiken, Chief Judge**:

      Catherine Y. Dewall ("plaintiff") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying her application

for Disability Insurance Benefits ("DIB"). Because the Commissioner's decision is supported by

substantial evidence, the decision is AFFIRMED.

# I.      BACKGROUND

**A.      The Application**

      Born in March 1954, plaintiff was 59 years old at the time of the administrative hearing.

Tr. 47, 182. She completed school through the 8th grade and has past work experience as a

dishwasher and as a worker at a frozen food processing plant. Tr. 203. She last worked in 2010.

*Id.* She alleges disability due to panic attacks, depression, bipolar disorder, mood swings,

learning disability, and having one kidney. Tr. 202.

      Plaintiff filed her application for DIB on November 17, 2011, alleging disability as of

June 25, 2010. Tr. 32, 173-77. After the Commissioner denied her application initially and upon

reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr.

135-36. An administrative hearing was held on March 1, 2013. Tr. 47-85. On June 19, 2013, ALJ

Anthony Johnson, Jr. issued a written decision finding plaintiff not disabled.[1] Tr. 29-42. The

Appeals Council denied plaintiff's subsequent request for review on February 2, 2015, and the

ALJ's decision became the final decision of the Commissioner. Tr. 1-4. This appeal followed.

---

[1] ALJ Marilyn Mauer also issued a written decision dated November 21, 2013, granting plaintiff a waiver from overpayment of DIB benefits. *See* Tr. 16-22.

**B.    The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." Keyser v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 724 (9th Cir. 2011); see also 20 C.F.R. § 404.1520; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. § 404.1520(a)(4). The five-step sequential process asks the following series of questions:

1.    Is the claimant performing "substantial gainful activity?" 20 C.F.R. § 404.1520(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. § 404.1510. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.    Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 404.1520(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.    Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the

claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.    Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.    Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. §§ 404.1520(a)(4)(v); 404.1560(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

See also Bustamante v. Massanari, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. Id. at 953; see also Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999); Yuckert, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. Tackett, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." Id.; see also 20 C.F.R. § 404.1566 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. Bustamante, 262 F.3d at 953-54; Tackett, 180 F.3d at 1099.

**C.    The ALJ's Decision**

Page 4 – OPINION AND ORDER

The ALJ performed the sequential analysis. At step one, he found plaintiff had not engaged in substantial gainful activity since June 25, 2010, the alleged onset date. Tr. 34. At step two, the ALJ concluded plaintiff had the severe impairments of bipolar disorder, mixed learning disorder, and panic disorder. Id. At step three, the ALJ determined plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 35.

The ALJ next assessed plaintiff's residual functional capacity ("RFC") and found that she retains the capacity to perform a full range of work at all exertional levels, with the following limitations: she is able to use commonsense understanding to perform detailed, but uninvolved, oral and written instructions (consistent with a range of unskilled work at reasoning level two as those terms are defined in the DOT); she can tolerate occasional contact with the general public, coworkers, and supervisors; and can perform low-stress jobs, defined as jobs not performed at an assembly line pace, with few workplace changes, little independent decision making, and no responsibility for the safety of others. Tr. 37-38.

At step four, the ALJ found plaintiff was able to perform her past relevant work as a kitchen helper/dishwasher. Tr. 41. Accordingly, the ALJ concluded plaintiff was not disabled from June 25, 2010 through the decision date. Tr. 42.

## II.    STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." Bray v. Comm'r, 554 F.3d 1219,

1222 (9th Cir. 2009). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. See Batson v. Comm'r, 359 F.3d 1190, 1193 (9th Cir. 2004). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. Id.; see also Bray, 554 F.3d at 1226.

## III.    DISCUSSION

Plaintiff argues the Commissioner erred by improperly evaluating the medical opinion of vocational examining physician Peter LeBray, Ph.D.

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. Carmickle v. Comm'r, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If a treating or examining

doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted).

Dr. LeBray performed a psychological evaluation of plaintiff on October 19, 2011. Tr. 393-402. He diagnosed plaintiff with bipolar disorder and a mixed learning disorder, and assessed her global assessment of functioning score at 52. *Id.* Summarizing his recommendations, Dr. LeBray wrote: "[Plaintiff] is not recommended for full-time, competitive work. A limited, part-time job without literacy demands or close social interaction ([with] coworkers, [or the] public) is advised. [Plaintiff] might do simpler, repetitive, unspeeded [sic], hands on tasks that are predictable and repetitive in a "relaxed" setting with a supportive mentor or supervisor (supportive, non-critical)." Tr. 401. Dr. LeBray concluded that plaintiff was capable only of limited, part-time employment in a non-competitive setting with supportive, non-critical supervision. Id.

As noted, the ALJ assessed plaintiff's RFC and found that plaintiff is capable of performing work with the following limitations: she is able to use commonsense understanding to perform detailed, but uninvolved, oral and written instructions (consistent with a range of unskilled work at reasoning level two as those terms are defined in the DOT); she can tolerate occasional contact with the general public, coworkers, and supervisors; and she can perform low-stress jobs, defined as jobs not performed at an assembly line pace, with few workplace changes, little independent decision making, and no responsibility for the safety of others. Tr. 37-38. This RFC did not include Dr. LeBray's limitation to only part-time employment and a setting with a supportive, non-critical mentor or supervisor. Tr. 37-38. The ALJ thus rejected Dr. LeBray's opinion to the extent that it conflicted with this RFC. Tr. 40. Plaintiff argues that this was error.

The Court disagrees, and finds when an examining physician's opinion is contradicted by another physician's opinion, that opinion may be rejected for specific, legitimate reasons. Tonapeytan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). Here, Dr. LeBray's more restrictive findings were inconsistent with the opinions of the state agency psychological consultants, who reviewed plaintiff's medical records and concluded that plaintiff was capable of performing simple, routine work with some social limitations.  Tr. 95-106, 108-21. The medical record contains extensive notes from the Samaritan Mental Health providers, who regularly treated plaintiff for several months and therefore created a more detailed picture of plaintiff's limitations and capabilities over time. Tr. 404-30, 436-55. After reviewing the treatment notes from Samaritan Mental Health Albany, the State agency consultants opined that plaintiff has moderate limitations in understanding and memory, sustained concentration and persistence, and social interaction; and no limitation in adaptation. Tr. 95-106. Dr. LeBray's opinion was thus contradicted by other medical evidence in the record, therefore the ALJ was required to provide specific, legitimate reasons for rejecting it. Tonapeytan, 242 F.3d at 1148.

The ALJ provided at least one specific, legitimate reason for rejecting Dr. LeBray's controverted opinion, noting that Dr. LeBray's opinion was inconsistent with the opinions of "treating sources within Samaritan Mental Health." Tr. 40 (citing Tr. 434-55). Inconsistency with other medical evidence is a specific, legitimate reason for rejecting a medical provider's opinion. See Valentine v. Comm'r, 574 F.3d 685, 692 (9th Cir. 2009). Here, plaintiff was treated at Samaritan Mental Health Albany from December 2011 through June 2012. Tr. 404-30, 436-55. Plaintiff was treated by Audrey Longson, D.O., who was supervised by Dr. Timothy McCarley, M.D. Id. These providers recorded observations consistent with the ALJ's RFC limitations. *See* Tr. 37-38. For example, a mental status exam performed in December 2011 reveals appropriate

hygiene and grooming, appropriate eye contact, normal speech rate, volume and tone, linear and organized thought process, intact attention and concentration, and fair to good insight and judgment despite a "lousy" mood and somewhat constricted affect. Tr. 406.

The Samaritan Mental Health providers did not limit plaintiff to part-time employment or to working in a setting with a supportive, non-critical mentor or supervisor. The moderate social limitations included in the ALJ's RFC thus reasonably accord with the findings of the Samaritan Mental Health treatment providers. To the extent these findings are consistent with the ALJ's RFC, they contradict the rejected portions of Dr. LeBray's medical opinion. The ALJ thus provided one specific, legitimate reason for rejecting Dr. LeBray's findings. Tonapeytan, 242 F.3d at 1148. On this record, the ALJ provided legally sufficient reasons for rejecting Dr. LeBray's findings. Tonapeytan, 242 F.3d at 1148.

## II.    CONCLUSION

The Commissioner's decision that plaintiff is not disabled was supported by substantial evidence in the record and is therefore AFFIRMED.

DATED this 29 day of January, 2016.

_____
Ann Aiken
United States District Judge